# EXHIBIT A

|  | IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR JACKSON COUNTY, FLORIDA |
|---|---|
| **VALORY LEWIS,** | CASE NO.: 20-CA- |
| Plaintiff, | FLA BAR NO.: 0739685 |
| v. | |
| **MHM HEALTH PROFESSIONALS, LLC** **a/k/a CENTURION OF FLORIDA, LLC** | |
| Defendant. | |
| _____/ | |

## COMPLAINT

Plaintiff, VALORY LEWIS, hereby sues Defendant, MHM HEALTH PROFESSIONALS, INC. a/k/a CENTURION OF FLORIDA, LLC, and alleges:

## NATURE OF THE ACTION

1. This is an action brought under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*; the Florida Private Whistleblower Act, §§ 448.101 *et seq.*, Florida Statutes; and the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101 *et seq.*; and the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2612, 2624.

2. This action involves claims which are, individually, in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of costs and interest.

## THE PARTIES

3. At all times pertinent hereto, Plaintiff, VALORY LEWIS, has been a resident of Florida and was employed by Defendant in Sneads, Jackson County at a Florida Department of Corrections facility known as Apalachee Correctional Institution (Apalachee CI).

4. At all times pertinent hereto, Defendant, MHM HEALTH PROFESSIONALS, LLC. a/k/a CENTURION OF FLORIDA, LLC (hereinafter, "Defendant MHM"), has been existing under the laws of the State of Florida as a foreign corporation and has conducted business in Florida, including an FDOC facility located in Sneads, Jackson County, known as Apalachee CI, where it employed Plaintiff as a Registered Nurse. Defendant MHM has been an "employer" as that term is used under the applicable laws identified above and is subject to the provisions of the FLSA. Defendant was Plaintiff's employer as it relates to the claims asserted herein.

## CONDITIONS PRECEDENT

5. Plaintiff has satisfied all conditions precedent to this action in that Plaintiff filed charges of discrimination with the FCHR and EEOC. This action is timely filed thereafter.

## STATEMENT OF THE ULTIMATE FACTS

6. Plaintiff, a protected whistleblower, was hired by Defendant on or about July 24, 2014 and held the position of Registered Nurse on or about on February 5, 2018 when Defendant wrongfully terminated Plaintiff.

7. Despite possessing a stellar work performance while employed with Defendant, Plaintiff has been subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because of reporting Defendant's unlawful employment activities and Plaintiff was subject to retaliation thereafter.

8. The disparate treatment and retaliation came at the hands of specifically but not limited to Director of Nursing, Clarissa Cooper, Health Service Administrator Rhonda McAlpin, and HR Representatives Sara Brus and Kathleen Down.

9. On March 18, 2016 LEWIS was offered a full-time position as a Registered Nurse at Apalachee Correctional Institute to which LEWIS accepted.

2

10. LEWIS's primary duty was providing medical care to the inmates at the facility.

11. LEWIS was assigned to the West Unit initially. Clarissa Cooper, a Director of Nursing ("DON"), became her direct supervisor. In or around November 2017, Cooper moved to the East Unit and was replaced by DON Allison Molsbee.

12. In the 2017 Annual Performance Review Form for the Overall Summary of Performance for Guiding Principles Portion, LEWIS was described as "very professional and maintains a positive client relationship through compliance with DOC and Centurion policies, Code of Conduct and Ethics". Additionally, LEWIS was characterized as someone who "earns the trust, respect and confidence of coworkers and clients through honesty, forthrightness, professionalism in all interactions and is open, fair and treats others with respect".

13. In the 2017 Annual Performance Review Form for the Overall Summary of Performance for Organizational Knowledge, LEWIS was described as someone who "adheres to Centurion's Tim and attendance policy by reporting to work on time and leaving on time except if an emergency is going on". In the 2017 Annual Performance Review Form for the Overall Summary of Performance for Job Skills and Client Service, respectively and quite simply, LEWIS was referred to as "a great clinical nurse" and "reliable, dependable, accountable, and adaptable".

14. In 2017, LEWIS informed MHMHP of "health issues" when she was issued a Final Warning. At that time, LEWIS was beginning to be treated less favorably with respect to attendance and work hours (leaving early and or staying late with approval). The following individuals as those who received favorable treatment in comparison to her: DON Cooper, LPNs Lisa Brogdon and Susan Burdick, Nursing Assistant April Kinard, Medical Records Clerk Annetta Thomas, and RN Ricky Mercer.

15. Because of the way that LEWIS began to be treated due to her health issues, she submitted six written complaints (respectively: October 13, 2017, November 14, 2017, November 17, 2017, November 28, 2017, December 12, 2017, and December 18, 2017) about the disparate treatment and hostile work environment in the workplace.

16. LEWIS details the poor work environment created by Cooper due to: the unprofessional gossiping about those she supervised, accusations of employees having inappropriate relationships with inmates without a shred of proof, and a lack of scheduling for when she left work due to maternity, leave inciting anger between the different shifts as there were four possible schedules circulating around.

17. After LEWIS submitted a PDO request on or around May/ early June for July 3, 2017 to take the day off and have her holiday be July 4, 2017, LEWIS began experiencing retaliation at the hands of Cooper. Not only was she not given a mere eight (8) hours of holiday, but some employees were approved for twenty-four (24) hours off on the same schedule as LEWIS.

18. After two (2) years of employment with no complaints whatsoever, shortly after LEWIS was denied time off for the holidays Cooper called LEWIS into her office and said LEWIS was "being unapproachable and people feel they can't come to me [her]".

19. Cooper's retaliatory conduct against LEWIS continued when she moved LEWIS from her permanent position in Sick Cell of the West Unit to the secluded Infirmary position full-time. This was so Mercer could be cross-trained in Sick Call despite the fact he had been working in the West Unit for less than a year and was unqualified in comparison to LEWIS.

20. LEWIS tried to communicate her own health issues as well as her daughter's to Cooper in an effort to be proactive. Cooper responded by calling her into the office the next day for a final warning regarding her time/ attendance.

4

21. LEWIS filled out her FMLA paperwork which was approved and filed for chronic health issues to which stress contributes immensely. After notifying Cooper of her appointment two hours prior to her shift, as required by FMLA, Cooper disregarded the chain of command and notified Lisa Barton, Regional RN DON as she believed LEWIS and her proper action "was kind of fishy". This was after LEWIS informed Cooper of her daughter's brain MRI.

22. Cooper intentionally tried to discredit LEWIS by finding ways to misconstrue her helpful actions as sanctionable. When Cooper asked LEWIS to do some CIC audit charts for Mrs. Edenfield LEWIS simply put Edenfield's name on the charts and placed those charts in her box. Cooper turns around only to accuse LEWIS of falsifying and changing the information on those records as the handwriting "is obviously different". LEWIS showed Cooper examples of the ARNP, not her, who actually wrote in the charts, but Cooper remained dismissive of LEWIS.

23. On or around May 5, 2017 LEWIS was granted permission to return to work after she was a patient in the Internal Medicine Practice of Murali Krishna Maddipati, M.D.

24. On July 27, 2017 LEWIS filed a Leave of Absence Request Form Application due to personal illness. This form detailed LEWIS's condition commenced in 2015, is considered lifelong, and she was treated on the following dates: 07/25/17, 06/27/17. 06/01/17, 05/02/17, 04/06/17, 03/03/17, 02/06/17, 01/10/17, 12/13/16, 09/17/16, 08/16/16, 07/14/16, 06/16/16, 05/03/16, and 04/14/16.

25. Per her Leave of Absence Form Request Application, LEWIS was required to have treatment visits at least twice per year (recommended one to two visits per month) due to the condition and over-the-counter medication was prescribed. Medical personnel explained that during acute exacerbations of symptoms, she may be unable to perform some of her job functions.

26. On or around September 14, 2017, LEWIS took her child, Sidney Elrod, to Tallahassee Memorial Hospital for a brief hospitalization.

27. On or around October 12 2017, LEWIS was one (1) minute late to work due to inclement weather, specifically thick fog making it extremely dangerous to drive. Due to LEWIS living in a rural area, despite the fact that she not only drove to work in spite of these conditions, she was unable to travel at her normal speeds resulting in her one minute of tardiness. Cooper docked her fifteen (15) minutes of time.

28. On or around November 28, 2017, Cooper allowed personnel to openly speak disrespectfully of Edenfield and encouraged such conduct. After one of many close-door meetings to which LEWIS was not privy to, an employee emerged essentially yelling, "I hope whoever wanted this is fucking happy!". This comment was made in regards to having to work with Edenfield, a friend of LEWIS.

29. Cooper's inability or unwillingness to treat her employees fairly is evidenced by her demeanor as well as her willingness to approve employee compensation. A nurse known to most employees as a friend of Cooper's was permitted to leave at lunchtime every day without clocking out. This is in comparison to LEWIS who helps the East Unit on occasion requiring her to leave the West Unit and Cooper refuses to approve her time exception form.

30. On or around, December 18, 2017, reports of improper nursing practices were given to Cooper. Despite the fact that those alleging these complaints were not qualified to give such critique, these were the same nursing practices that had been done for years with no issues. Ironically, those that desired to leave the West Unit to move to the East Unit rescinded their requests once Cooper asked them to. This indicates an alarming level of willingness to do whatever it takes to remain on Cooper's good side.

31. Later that day, LEWIS was unable to find her Littman stethoscope. She considered this strange as she placed her stethoscope in her mailbox in medical records every night to find it with ease in the morning. After searching for quite some time, LEWIS found her stethoscope thrown under the cabinet in medical records which is used to store rubber bands, old computer keyboards, and speakers.

32. Cooper went so far as to send LEWIS a Bible verse in an email as if that was the best she could do to explain her conduct and apologize without admitting to any wrongdoing.

33. LEWIS was awarded Employee of the Month in February 2018 as the first nurse to ever be given this award. LEWIS was additionally recognized for her outstanding work in sick call.

34. On or around January 24, 2018, am incident report was written in which LEWIS termination papers stated "Final Termination" for failing to follow proper policy/ procedure, although LEWIS was never written up for any violation of not following policy/ procedure. She was fired on February 5, 2018.

35. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fees under the laws referenced herein.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

36. Paragraphs 1 through 35 are re-alleged and incorporated herein by reference.

37. This count sets forth a claim against Defendant for violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq*.

38. At all pertinent times, Plaintiff was an employee of Defendant.

39. Defendant failed to pay Plaintiff at least the required federal minimum wage rate for every compensable hour of labor performed, thus violating the FLSA.

40. In addition, Defendant failed to pay Plaintiff at the required rate of one and one-half times a rate greater than or equal to minimum wage for every compensable hour of labor performed beyond 40 in each week in which Plaintiff worked in excess of 40 compensable hours.

41. Moreover, after Plaintiff reported Defendant's failure to properly compensate her, she was fired.

42. The violations set forth in this count resulted, in whole or in part, from Defendant's failure to credit and pay Plaintiff for all compensable time worked and her objections to her pay deficiencies.  Defendant's violations were willful, intentional, and systemic.  Specifically, Defendant both failed to properly pay Plaintiff and, then, retaliated against Plaintiff because she asserted her rights under the FLSA.

43. As a result of Defendant's violations of the FLSA set forth herein, Plaintiff is entitled to recover the amount of unpaid wages, both at a regular wage no less than minimum wage and for hours in excess of 40 at a rate of one and one-half times that wage, and an equal amount as liquidated damages.  Plaintiff is further entitled to pay for the losses resulting, at least in part, from her reporting violations of the FLSA.  Over and above such sums, Plaintiff is entitled to liquidated damages and any other damages allowed by law as well as injunctive/equitable relief including without limitation reinstatement of her position.  These losses have occurred in the past, are occurring at present and will continue to occur in the future.  Plaintiff is also entitled to recover costs and attorney's fees under the FLSA.

## COUNT II
## WHISTLEBLOWER RETALIATION

44. Paragraphs 1 through 35 are re-alleged and incorporated herein by reference.

8

45. This count sets forth a claim against Defendant for whistleblower retaliation in violation of § 448.102, Florida Statutes.

46. During the course of Plaintiff's employment with Defendant, Plaintiff objected to certain practices of Defendant that were in violation of state and/or federal laws and/or which she reasonably and objectively believed were in violation of same.

47. During the course of Plaintiff's employment, Plaintiff objected to certain practices of Defendant that were in actual or suspected violation of laws, rules and/or regulations. After Plaintiff objected, Defendant fired Plaintiff.

48. Thus, Plaintiff was fired because of her objection to and refusal to permit practices of Defendant that were in violation of one or more laws, rules or regulations. This includes without limitation Defendant's failure to pay Plaintiff for all hours works and all overtime where applicable. Specifically, Plaintiff was terminated because she voiced opposition to practices that she reasonably and objectively believed constituted violations of law, including but not limited to the illegal pay practices under the FLSA referenced in part above.

49. Plaintiff was terminated because she disclosed a practice of Defendant that is in or reasonably believed to be in violation of a law, rule, or regulation, and Plaintiff brought the activity, policy, or practice to the attention of a supervisor and/or to Defendant and afforded Defendant a reasonable opportunity to correct the activity, policy, or practice and/or objected to, or refused to participate in, any activity, policy, or practice of Defendant which is in violation of a law, rule, or regulation and/or which Plaintiff reasonably and objectively believed were in violation of same.

50. The disclosures made by Plaintiff are protected under §§ 448.101 *et seq.*, Florida Statutes.

9

51. As a direct and proximate cause of Plaintiff's whistleblowing activities referenced above, Plaintiff has been damaged, which damages include but are not limited to lost wages and other tangible job benefits plus attorney's fees and costs as provided by § 448.104, Florida Statutes, and every other kind of damage allowed by law. Plaintiff has also suffered emotional pain and suffering damages and other intangible damages that are continuing. Plaintiff is also entitled to injunctive relief pursuant to § 448.103(2), Florida Statutes.

## COUNT III
## DISABILITY DISCRIMINATION

52. Paragraphs 1 through 35 are re-alleged and incorporated herein by reference.

53. This count sets forth a claim against Defendant for disability discrimination under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101 *et seq*.

54. Plaintiff has been the victim of discrimination on the basis of her disability and/or perceived disability and/or her association with her disabled daughter. During the course of Plaintiff's employment with Defendant, she was treated differently than similarly situated non-disabled/perceived-as-disabled/associated-with-disabled employees.

55. Defendant is liable for the differential treatment of Plaintiff which adversely affected the terms and conditions of Plaintiff's employment with Defendant.

56. Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

57. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were disability/perceived-disability/associational-disability based and in violation of the laws set forth herein.

10

58. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein led, at least in part, to Plaintiff's termination.

59. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon disability or perceived disability and/or her record of having an impairment and/or her known association with her disabled or perceived-as-disabled daughter.

60. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief and punitive damages.

### COUNT IV
### VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

61. Paragraphs 1 through 35 are re-alleged and incorporated herein by reference.

62. This count sets forth a claim against Defendant for violation of the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2612, 2624.

63. This is an action against Defendant for harassing Plaintiff due to using intermittent leave for a known serious medical condition of Plaintiff's daughter as well as her own known serious medical condition, and for terminating Plaintiff for taking time off that was protected under the FMLA. This is both an interference and retaliation case.

64. After taking intermittent leave for his wife's serious health conditions, Defendant made changes to her work duties and subjected Plaintiff to hostility due to her and her daughter's

11

known serious medical conditions. Defendant then took adverse personnel actions against Plaintiff for using protected leave, and then terminated her because of her need for leave.

65. Plaintiff was denied rights and benefits conferred by the FMLA.

66. Prior to Plaintiff's need for leave for her and her daughter's known serious medical conditions, she worked for Defendant for more than one year and he worked for more than 1,250 hours.

67. Defendant's violations of the FMLA were willful.

68. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered past and future pecuniary losses, inconvenience, lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are occurring at present and will continue in the future. Plaintiff is entitled to liquidated damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein, including but not limited to his actual losses as well as pain and suffering as applicable and liquidated damages under the FLSA;

(d) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs under the various laws cited above and as otherwise allowed by law;

(f) award Plaintiff interest where appropriate;

(g) award Plaintiff punitive damages against Defendant; and

(h) grant such other further relief as being just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 4th day of February 2020.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
marie@mattoxlaw.com
Secondary sources:
michelle@mattoxlaw.com
marlene@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF